## Martin et al. v. Kenesson.

(Decided June 24, 1938.)

HUBERT MEREDITH, Attorney General, A. E. FUNK, Assistant Attorney General, and ROBERT E. HATTON for appellants.

ROGER D. BRANIGIN, J. F. WILLIAMSON and MARTIN R. GLENN for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

The question presented for decision by this appeal is whether the state of Kentucky may impose an income tax upon the salary of appellee, as secretary and treasurer of the Production Credit Corporation of Louisville. The taxing authorities of the state required appellee to file an income tax return for the year 1936 which he did under protest and reported as sole and only income his fixed annual salary for such year. The appeal is from a judgment holding such income to be immune and exempt from state income tax and enjoining appellants from collecting or attempting to collect by judicial proceedings or otherwise such tax from appellee.

By what is known as the Farm Credit Act of 1933, 48 Statutes 257, 12 U. S. C. A., section 1131 et seq., Congress authorized and provided for the creation of twelve corporations to be known as Production Credit Corporations, one of such corporations to be established in each city where a Federal Land Bank is located. The title to the Act reads:

"An Act To provide for organizations within the Farm Credit Administration to make loans for the production and marketing of agricultural products, to amend the Federal Farm Loan Act, to amend the Agricultural Marketing Act, to provide a market for obligations of the United States, and for other purposes."

Apparently the purpose of the Production Credit Corporation was to supplement the functions of the Federal Land Bank and other agencies making loans to farmers and to provide short term credit to farmers for the production and marketing of crops which was not otherwise available. As manifest by the Act and as a matter of common knowledge this legislation is a part of the national government's relief program and was intended to foster, aid and encourage agriculture. Loans are not made directly to the farmers by the Production Credit Corporation, but that function is carried out by local organizations known as Production Credit

Associations which are organized, capitalized and supervised by the corporations and made up of farmers desiring to borrow money for the purposes enumerated in the Act. The United States owns all the stock in these corporations and unquestionably they are governmental agencies created to promote and carry out governmental functions and policies. McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579; Smith v. Kansas City Title & Trust Company, 250 U. S. 180, 41 S. Ct. 243, 65 L. Ed. 577; Federal Land Bank of Columbia v. Gaines, 290 U. S. 247, 54 S. Ct. 168, 78 L. Ed. 298.

The constitution of the United States does not expressly forbid or limit the exercise of the power of the federal government to tax states or their instrumentalities nor does it expressly limit the power of the state to tax agencies or instruments of the federal government. Helvering v. Gerhardt, 58 S. Ct. 969. 82 L. Ed. 893, decided by the Supreme Court of the United States, May 23, 1938, however, a doctrine of implied limitation upon such power which is universally recognized by state and federal courts had its inception in McCulloch v. Maryland, supra. In Helvering v. Gerhardt, supra, it is pointed out that Chief Justice Marshall in McCulloch v. Maryland, supra, recognized an obvious distinction or difference between the extent of the power of the state to tax instrumentalities of the federal government and the power of the latter to tax instrumentalities of state government. After referring to the argument that since the power of taxation in the federal and state governments was acknowledged to be concurrent therefore argument to sustain the right of federal government to tax banks chartered by the state would equally sustain the right of states to tax national banks. Chief Justice Marshall in the opinion in the latter case said (page 435):

"But the two cases are not on the same reason. The people of all the States have created the general government, and have conferred upon it the general power of taxation. The people of all the States, and the States themselves, are represented in Congress, and, by their representatives, exercise this power. When they tax the chartered institutions of the States, they tax their constituents; and these taxes must be uniform. But, when a State taxes the operations of the government of the United States, it acts upon institutions created, not

by their own constituents, but by people over whom they claim no control. It acts upon the measures of a government created by others as well as themselves, for the benefit of others in common with themselves. The difference is that which always exists, and always must exist, between the action of the whole on a part, and the action of a part on the whole—between the laws of a government declared to be supreme, and those of a government which, when in opposition to those laws, is not supreme.''

It is argued in effect by counsel for appellants that although the Production Credit Corporation is a governmental instrumentality created by Congress, it performs no governmental function but performs services which in their nature belong to private business enterprises to which the doctrine of implied immunity does not apply. Included in the authorities cited and relied on by appellants are Fox Film Corporation v. Doyal, 286 U. S. 123, 52 S. Ct. 546, 76 L. Ed. 1010; Federal Land Bank v. Priddy, 295 U. S. 229, 55 S. Ct. 705, 79 L. Ed. 1408; James v. Dravo Contracting Company, 302 U. S. 134, 58 S. Ct. 208, 82 L. Ed. ..., 114 A. L. R. 318; Helvering v. Powers, 293 U. S. 214, 55 S. Ct. 171, 79 L. Ed. 291; Ohio v. Helvering, 292 U. S. 360, 54 S. Ct. 725, 78 L. Ed. 1307, which are typical of all cases cited.

In the Fox Film Case it was held that profits and royalties derived from patents and copyrights were subject to state taxation, but it was pointed out that the United States had no interest in the production itself or in the copyrights or profit derived from their use, nor did Congress provide that the right or profits arising from its exercise should be exempt from taxation.

In Federal Land Bank v. Priddy, supra, it was held that since a Federal Land Bank is entitled to sue and be sued, it is subject to attachment upon its own contractual obligations but it was pointed out that immunity from such processes and their incidents are less readily implied than immunity from taxation.

In James v. Dravo Contracting Company, supra, it was held that a contractor who did some work for the federal government under a contract with it was liable to the state for a tax upon the gross amount received from the government under such contract; that case involved a tax upon income of an independent contractor

and not upon an officer or employee of a federal instrumentality. That and some of the other cases cited and relied on puts such independent contractors without the scope of the implied immunity doctrine. In Helvering v. Powers, supra, and Ohio v. Helvering, supra, it was held in effect that the doctrine of implied immunity did not apply to state governments where the work, business or activities were not purely and essentially governmental. To the same effect see Helvering v. Gerhardt, supra.

Appellants also rely on the case of Parker v. Mississippi State Tax Commission, 178 Miss. 680, 174 So. 567, where it was held that the salary of an officer of the Federal Land Bank of New Orleans and who was a resident of Mississippi was subject to the Mississippi income tax law, and especially so because the Supreme Court of the United States denied a writ of certiorari. 302 U. S. 742, 58 S. Ct. 144, 82 L. Ed. 105. The ground upon which the writ was denied does not appear but that is immaterial since a denial of a writ of certiorari by the Supreme Court is not equivalent to an affirmance of the judgment and imports no expression of opinion upon the merits of the case. Hughes Federal Practice, section 3302; U. S. v. Carver, 260 U. S. 482, 43 S. Ct. 181, 67 L. Ed. 361; Talcott v. United States, 9 Cir., 23 F (2d) 897.

We are unable to distinguish this case in all its material aspects from that of New York ex rel. Rogers v. Graves, 299 U. S. 401, 57 S. Ct. 269, 81 L. Ed. 306. In that case the United States had acquired all the capital stock of the Panama Railway Company, a privately owned corporation, except a few qualifying shares owned by the directors. The railroad operates across the Isthmus of Panama, and the company also operates a commissary, dairy and hotel and also certain steamship lines. It transports private freight and passengers as well as government property and persons engaged in governmental activities. It was held that the fixed annual salary of Rogers as general counsel for the Panama Railroad Company, who was a resident of New York, was immune from State taxation. In the course of the opinion, it is said (page 272):

"The railroad company being immune from state taxation, it necessarily results that fixed salaries and compensation paid to its officers and em-

ployees in their capacity as such are likewise immune.''

The holding in that case has never been departed from but has been referred to with approval in very recent cases.

Keeping in mind the opinion of Chief Justice Marshall drawing a clear distinction between the powers of the national government and the powers of the state government, respecting the taxation of agencies or instrumentalities of the other, whether departmental or corporate, it will be seen that we must necessarily be controlled by decisions of the Supreme Court defining the limits of the powers of the state in the matter of taxing such instrumentalities of the United States. And because of this recognized distinction, decisions of the federal courts relating to the powers of the federal government to tax the state or its instrumentalities are inapplicable in this instance since they furnish no precedent for the exertion of the implied power of the state to impose taxes upon federal instrumentalities. In such matters the constitution of the United States and laws enacted by Congress thereunder and the decisions of its courts in interpreting and giving effect to them control and prevail over the constitution and laws of the states. When there is repugnancy or conflict, the sovereignty of the state is limited by the sovereignty of the federal government, therefore, decisions of the state courts cited to sustain appellant's position cannot be accorded any weight if they run counter to the constitution and laws of the federal government or decisions of the Supreme Court.

As we view the matter the case of New York ex rel. Rogers v. Graves, supra, stands as a barrier to the attempted exercise of the state's taxing power and until overruled should be respected and followed by taxing authorities and courts of the state.

Judgment affirmed.