**UNITED STATES of America,**
Plaintiff,

v.

**WASHINGTON TOLL BRIDGE AU-THORITY, dba Washington State
Ferries, Defendant.**

No. 2243.

United States District Court
W. D. Washington, S. D.

Dec. 14, 1960.

96

Charles P. Moriarty, U. S. Atty., Seattle, Wash., and Charles W. Billinghurst, Asst. U. S. Atty., Tacoma, Wash., for plaintiff.

John J. O'Connell, Atty. Gen., Jennings P. Felix, Special Asst. Atty. Gen., for defendant.

BOLDT, District Judge.

The basic question presented in this case is whether under the agreed facts defendant Authority and the users of its ferry services are exempt from the federal taxes imposed by 26 U.S.C. § 4261

(transportation of persons) and § 4271 (transportation of property). Recovery upon assessments against the Authority based on its passenger and freight ferry traffic from January 10, 1957 to September 30, 1957 is the immediate objective of the action. Jurisdiction is vested in this court by 26 U.S.C. § 7402.

The Washington State Toll Bridge Authority was established by statute as a state agency in 1937. R.C.W. 47.56.020. In 1949 the state legislature empowered the Authority to acquire and operate a system of ferries on and across Puget Sound and its tributory waters. R.C.W. 47.60.010. Pursuant thereto the Authority purchased vessels, terminals, routes and other property from various private concerns in the business of operating ferries. The Authority presently operates about 23 vessels on various routes throughout the Puget Sound and into Canadian waters. This water transportation system is probably the largest of its kind in the United States.

The Authority commenced transportation services in June, 1951, and from then until April 1, 1952 it collected and paid under protest federal transportation taxes, as required by a ruling of the Commissioner of Internal Revenue. When the federal government sought to collect transportation taxes and penalties for the period April 19, 1952 to December 30, 1954, extended negotiations concerning the matter were undertaken between the parties. An arrangement resulted whereby the Authority agreed to resume collection from patrons of amounts equal to the transportation taxes and to deposit such amounts in escrow pending judicial determination of the applicability of the above cited tax statutes to the ferry operations of the Authority. The Commissioner agreed to promptly initiate litigation to that end and all back tax claims against the Authority were compromised for $75,000. On January 10, 1957 the Authority began to place in escrow an amount equal to the tax the government contended was due and taxable. The Commissioner then authorized the commencement of this action for

the collection of taxes assessed for the first three quarters of 1957 and for application thereto of the funds in escrow.

Defendant contends that the only procedure maintainable for adjudication of the law issue referred to is under 26 U.S.C. § 6672 which provides for the imposition and collection of a 100% penalty where a party obligated to collect a tax wilfully fails or refuses to do so. Recovery of penalties admittedly is not sought in this action and for that reason defendant urges that dismissal is required.

The agreement of the parties, arrived at in a good faith effort to provide for adjudication of disputed questions of law, makes it clear that the parties intended to avoid a penalty proceeding wherein wilfulness is an essential element. "Wilfully" as used in section 6672 has been defined as "without reasonable cause" or "capriciously." See Kellems v. United States, D.C.D.Conn.1951, 97 F. Supp. 681. Procedure as in the action now before the court was contemplated by the parties' agreement. In these particular circumstances, plaintiff properly followed the necessary procedural requirements in the bringing of this action for collection of the assessed excise transportation taxes out of the escrow fund and defendant may not challenge that procedure which raises the basic issue of the applicability of the cited tax statutes to the ferry operations of defendant.

On the merits of the basic issue, defendant contends that the ferry operations of the Authority are immune from federal taxation because in essence they are an integral and necessary part of the state highway system, the providing of which has been long recognized as a state governmental function. Plaintiff contends that in taking over an extensive ferry system, previously operated as a private business over a period of many years, the Authority entered into a proprietary activity which is not entitled to the state's immunity from taxation.

It is well settled that the maintenance of a highway system, including necessary bridges, by a state government or a subdivision thereof, is an exercise of a traditional and essential governmental function. Commissioner of Internal Revenue v. Harlan, 9 Cir., 1935, 80 F.2d 660, and State ex rel. Wash. Navigation Co. v. Pierce County, 1935, 184 Wash. 414, 51 P.2d 407. Where a ferry serves as an essential link in a highway, clearly it is as much an integral part of the highway system as a bridge. United States v. State Road Dept. of the State of Florida, 5 Cir., 1958, 255 F.2d 516; United States v. King County, Wash., 9 Cir., 1922, 281 F. 686.

While the taxes in question are imposed on users and merely collected by carriers, when the transportation service is performed by a state agency in exercise of an essential governmental function a federal tax on the service is an unlawful interference with and burden upon the state function. United States v. King County, Wash., supra.

The considerable size and extent of the Puget Sound ferry system, in and of itself, does not change the basic nature of the service and function performed by the ferries operated in the system. By means of the ferries the Authority provides in effect a public highway across water, fulfilling public transportation requirements dictated by the geography of the area. The irregular shoreline of the inland waters of Puget Sound separates large areas of land and important centers of population within the state of Washington. An extensive ferry system is the only practical means of providing convenient public transportation connecting many highway terminals and permitting the passage of persons and property between numerous cities and towns of the state. Without such water transportation the public, in normal and essential communication, would be put to extensive additional land travel to reach many places within the state and residents of a considerable number of populated islands would have no public means of access to other areas of the state. The highway transportation needs of the people of Washington and reasonable

social and economic development of the state fully justify the nature and extent of the ferry system provided by the defendant Authority.

██ The fact that substantial parts of the ferry system were previously operated as a private business does not change the basic nature of the governmental function involved. Since early times the establishment of ferries across streams and on navigable waters, for normal transportation purposes as distinguished from sightseeing, amusement and the like, has not been considered a matter of purely private right and function. It has long been deemed a public function permitted only by the consent, express or implied, of sovereign authority. See 22 Am.Jur., Ferries § 3, p. 554. A true governmental function remains so whether performed directly by the sovereign or by a private concern under permission and control of the sovereign.

██ As contended by plaintiff, the trend of modern case authority has been to confirm, and perhaps extend, the power of congress to tax many activities in which a state may engage. State of South Carolina v. United States, 1905, 199 U.S. 437, 26 S.Ct. 110, 50 L.Ed. 261; State of Ohio v. Helvering, 1934, 292 U.S. 360, 54 S.Ct. 725, 78 L.Ed. 1307; Helvering v. Powers, 1934, 293 U.S. 214, 55 S.Ct. 171, 79 L.Ed. 291; Helvering v. Gerhardt, 1938, 304 U.S. 405, 58 S.Ct. 969, 82 L.Ed. 1427; Allen v. Regents, 1938, 304 U.S. 439, 58 S.Ct. 980, 82 L.Ed. 1448; State of New York v. United States, 1946, 326 U.S. 572, 66 S.Ct. 310, 90 L.Ed. 326. See also United States v. State of California, 1936, 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567. However, all of the cited cases directly or by implication acknowledge that there are activities in which a state may perform its traditional governmental functions immune from federal taxation. Under the particular circumstances and peculiar geographic conditions under which its services are performed, the operation of the Puget Sound Ferry system by defendant Authority is such a governmental activity of the state of Washington. In the performance of such functions the state and its agencies are immune from federal taxation, including transportation taxes provided for in 26 U.S.C. §§ 4261 et seq. and 4271 et seq.

Findings of fact, conclusions of law and judgment in accordance herewith may be presented at the convenience of counsel.